UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

|  |  |
|---|---|
|  | **ORDER** |
|  | 15-cv-3490 (ADS)(SIL) |
|  | 15-cv-3491 (JFB)(SIL) |
|  | 15-cv-3492 (DRH)(SIL) |
|  | 15-cv-3494 (JMA)(SIL) |
|  | 15-cv-3495 (SJF)(SIL) |
|  | 15-cv-3496 (ADS)(SIL) |
| IN RE MALIBU MEDIA ADULT FILM | 15-cv-3497 (LDW)(SIL) |
| COPYRIGHT INFRINGEMENT | 15-cv-3498 (SJF)(SIL) |
| CASES | 15-cv-3499 (JFB)(SIL) |
|  | 15-cv-3500 (LDW)(SIL) |
|  | 15-cv-3501 (LDW)(SIL) |
|  | 15-cv-3502 (JS)(SIL) |
|  | 15-cv-3503 (JMA)(SIL) |
|  | 15-cv-3504 (JFB)(SIL) |
|  | 15-cv-3505 (JFB)(SIL) |

------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

These copyright infringement actions were commenced by Plaintiff Malibu Media, LLC ("Plaintiff" or "Malibu Media") against various unnamed defendants (the "Doe Defendant(s)"), who have only been identified by Internet Protocol ("IP") addresses allegedly associated with them. Presently before the Court in each such case is a motion for expedited discovery under Federal Rule of Civil Procedure 26(d)(1), seeking permission to serve subpoenas upon various Internet Service Providers ("ISPs") to obtain the true identities of the Doe Defendants. For the reasons set forth herein, the motions, which are materially indistinguishable, are granted, subject to a protective order as set forth more fully below.

## I.    Background

The following facts are drawn from the Complaint filed in the action styled *Malibu Media, LLC v. Doe*, bearing case number 15-cv-3490 (ADS)(SIL).    The allegations in that case are virtually identical to those asserted in each of the related actions identified in the caption.    Thus, the Court uses this common set of facts in reaching its decision on all 15 pending motions, and, despite providing internal references only to the docket relating to case number 15-cv-3490 (ADS)(SIL), the Court refers to the Doe Defendants and the ISPs implicated in all 15 motions collectively throughout this Order.

Malibu Media is a company engaged in the production and distribution of adult films.  *See* Declaration of Collette Field in Support of Plaintiff's Motion Leave to Take Discovery Prior to a Rule 26(f) Conference ("Field Decl."), DE [6], ¶¶ 6-7.    Collette Field and Brigham Field, a married couple, are the company's sole owners.  *See id.* ¶¶ 3, 11.    Plaintiff alleges that its customers pay either a monthly or annual subscription fee to access an online library of copyrighted video content.  *See id.* ¶ 10, 12; *see also* Compl., DE [1], ¶ 4 (alleging that Malibu Media is the registered owner of the copyrights alleged to have been infringed upon by the Doe Defendant in each action).    According to Malibu Media, these internet subscription sales constitute the company's primary source of revenue.  *See* Field Decl. ¶ 13.

Plaintiff's claims arise primarily from the alleged widespread pirating of its video content.  Specifically, Malibu Media alleges that "[e]ach month, approximately 80,000 U.S. residents use BitTorrent to steal [its] movies."  *Id.* ¶ 16.    BitTorrent is a

"peer-to-peer file sharing system[] used for distributing large amounts of data, including, but not limited to, digital movie files." Compl. ¶ 12.  Its users accomplish this by "break[ing] a file into many small pieces called bits" and then "exchang[ing] these small bits among each other instead of attempting to distribute a much larger file." *Id.* ¶ 14.

In a purported effort to "deter infringement and be compensated for the intentional theft of [its] videos," Field Decl. ¶ 24, Malibu Media has commenced actions in courts throughout the country against unnamed defendants alleged to have used BitTorrent to illegally download and share Plaintiff's copyrighted works. However, the true identities of these allegedly infringing individuals are unknown, except by reference to the IP address utilized by the users for internet access.  In this regard, Malibu Media alleges that the files illegally downloaded via BitTorrent bear a "unique cryptographic hash value . . . which acts as a digital fingerprint identifying the digital media file." Compl. ¶ 18.  Plaintiff allegedly retained an investigator to establish direct connections with the Doe Defendants, via the IP addresses providing the Doe Defendants internet access, and downloaded directly from the Doe Defendants one or more bits of digital media files that were then identified by their unique "hash value" as containing Plaintiff's copyrighted works. *See id.* ¶¶ 19-21. The methodology purportedly used by the investigator, IPP International UG, is set forth in an affidavit by one of its employees, Tobias Feiser.  *See* DE [8] (Declaration of Tobias Feiser in Support of Plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference ("Feiser Decl.")).  In sum and substance, Feiser explains that

3

he utilized software named International IPTracker v 1.5 and related technology to "enable[e] the scanning of the BitTorrent file distribution network for the presence of infringing transactions involving Plaintiff's movies." Feiser Decl. ¶ 9. Feiser confirms that he connected with one or more computers utilizing the Doe Defendants' IP addresses to "transmit a full copy, or portion thereof" of digital media files identified by unique hash values as containing Plaintiff's copyrighted works. *Id.* ¶ 13.

By the instant motions, Malibu Media seeks to uncover the true identities of the Doe Defendants by tracing the IP addresses implicated in the infringement (*i.e.*, the BitTorrent downloading) to the particular individuals or entities to which the IP addresses are registered. Plaintiff seeks to accomplish this by subpoenaing such identifying information from the ISPs that contract with the individuals or entities to provide internet access. As explained by Plaintiff's co-owner, Collette Field, "once provided with the IP [a]ddress, plus the date and time of the detected infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, and phone number of the applicable subscriber in control of that IP address at the stipulated date and time." *Id.* ¶ 23.

Plaintiff provides an affidavit by Patrick Paige, in support of its motions. *See* DE [7] (Declaration of Patrick Paige in Support of Plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference ("Paige Decl.")). Paige, a former detective in the computer crimes unit of the Palm Beach County Sherriff's Department and the founder of a company called Computer Forensics, LLC, has been recognized by various courts as an expert in the field of computer forensics. *See id.* ¶¶ 2-8. In

Paige's experience, "during the initial phase of Internet based investigations, the offender is only known to law enforcement by an IP address." *Id.* ¶ 9. Further, "[t]he only entity able to correlate an IP address to a specific individual at a given date and time is the [ISP]." *Id.* ¶ 10. Thus, Paige concludes that subpoenaing the ISPs to learn the subscribers' true identities is required to ascertain the identities of the alleged infringers. *See id.* ¶ 15.

Accordingly, Plaintiff seeks permission to serve Rule 45 subpoenas on various ISPs allegedly responsible for providing internet access to the Doe Defendants' IP addresses and relatedly maintaining identifying subscriber information regarding the Doe Defendants, commanding them to disclose to Malibu Media the Doe Defendants' true names and addresses. *See* Proposed Order on Motion for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conference, DE [6-1]. The Court notes that Plaintiff does not provide any proposed subpoenas for the Court's review.

## II.   Legal Standard—Good Cause

"Though parties generally may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f), courts may in some instances order earlier discovery." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)). Courts in this District and in the Southern District of New York generally require a showing of "good cause" prior to permitting expedited discovery prior to a Rule 26(f) conference. *See In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 86-87 (E.D.N.Y. 2012) (citing *Ayyash v. Bank Al— Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005)); *see also Malibu Media, LLC v. Doe*,

15-cv-1883, 2015 U.S. Dist. LEXIS 51579, at \*5 (S.D.N.Y. Apr. 10, 2015) (applying "the flexible standard of reasonableness and good cause," adopted in *Ayyash*, *supra*). "[I]n deciding a matter merely of regulating the timing of discovery, 'it makes sense to examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances.'" *Ayyash*, 233 F.R.D. at 327 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (emphasis in original)).

## III.   Analysis

### A.   Overarching Principles

As Malibu Media readily concedes, it is no stranger to copyright infringement litigation and, in particular, to litigating in the unusual pre-answer, pre-discovery, *ex parte* posture in which the instant motions arise.  Indeed, courts around the country have weighed in on the propriety of the relief sought here, with varying results. *Compare Malibu Media, LLC v. Doe*, 15-cv-1883, 2015 U.S. Dist. LEXIS 51579 (S.D.N.Y. Apr. 10, 2015) (denying motion for expedited discovery under nearly identical circumstances); *with Malibu Media, LLC v. Doe*, 12-cv-2950, 2012 U.S. Dist. LEXIS 77469 (S.D.N.Y. June 1, 2012) (granting motion for expedited discovery consistent with protective order).   Almost without exception, courts to have considered Malibu Media's litigation strategy have done so with a skeptical eye, frequently observing the inherent risks involved in permitting disclosure of personal identifying information that will be used to associate that person with the illegal pirating of pornographic films.   *E.g.*, *In re BitTorrent Adult Film Copyright*

*Infringement Cases*, 296 F.R.D. at 90 (noting that "[c]oncern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants" (collecting cases)); *Media Prods., Inc. v. Doe*, 12-cv-3719, 2012 U.S. Dist. LEXIS 84111, at *4 (S.D.N.Y. June 18, 2012) ("In such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations. The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material").  In some cases, courts have found that the potentially and "understandably" embarrassing experience of being associated with such material invites "abusive litigation tactics to extract settlements" from Doe defendants.  *See In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. at 89 (finding that the extraction of settlements from individuals repulsed by the prospect of association with downloading adult films "may be the principal purpose of these actions").

In addition, these already legitimate concerns are exacerbated by the growingly unrealistic expectation that the registered subscriber of an IP address is the same person alleged to have engaged in the allegedly infringing conduct. This modern reality has been echoed in similar cases.  For example, in *In re BitTorrent Adult Film Copyright Infringement Cases*, Magistrate Judge Brown noted that "[a]n IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of

7

telephones." 296 F.R.D. at 84-85.  The court there explained that "it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call." *Id.* at 84.  This is particularly so in light of the ubiquitous use of wireless routers in homes and businesses: "[as of 2012] 61% of US homes [had] wireless access. . . . [Thus d]ifferent family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film." *Id.*; *accord Media Prods., Inc.*, 2012 U.S. Dist. LEXIS 84111, at *3 ("The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. . . . Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering an internet connection"); *Digital Sin, Inc.*, 279 F.R.D. at 242 ("Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. . . . [T]he perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks").  With these principles in mind, the Court turns to the instant motions.

### B.    <u>Good Cause</u>

The weight of authority counsels in favor of finding the required good cause. First, Malibu Media has alleged a *prima facie* case of copyright infringement.  " 'To establish a *prima facie* claim of copyright infringement, a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.' "  *Malibu Media, LLC v. Doe*, 12-cv-3810, 2013 U.S. Dist. LEXIS 99332, at *15 (S.D.N.Y. July 16, 2013) (quoting *ABC, Inc. v. Flying J, Inc.*, 06-cv-2967, 2007 U.S. Dist. LEXIS 13252, at *9 (S.D.N.Y. Feb. 22, 2007)).  In this case, Plaintiff has alleged that it is the registered owner of the implicated copyrighted works and, as outlined in the affidavits of Tobias and Feiser, the Doe Defendants utilized unique IP addresses to illegally download those works without Malibu Media's authorization, permission, or consent.  *See* Compl. ¶ 33.

Second, it appears Malibu Media is without an alternative viable method of obtaining the identity of the Doe Defendants without a court-ordered subpoena.  *See Digital Sin, Inc.*, 279 F.R.D. at 241 (finding good cause for expedited discovery where, *inter alia*, the plaintiff "appear[ed] to have no other way of obtaining the identities of the alleged infringers"); *Malibu Media, LLC v. Doe*, 12-cv-2955, 2012 U.S Dist. LEXIS 107131, at *6 (S.D.N.Y. July 31, 2012) ("follow[ing] the recent precedents set by other courts in [the Southern District of New York] in nearly identical circumstances" finding good cause where, *inter alia*, the "plaintiff ha[d] no reasonable means other than through the ISPs by which to identify the individuals allegedly involved" in the infringing conduct); *Media Prods., Inc.*, 2012 U.S. Dist. LEXIS 84111, at *1-*2

(S.D.N.Y. June 18, 2012) (finding good cause where "without [expedited discovery], [the p]laintiff w[ould] not be able to ascertain the identities of the Doe defendants or to effect service upon them").   Here, Plaintiff claims that without a court-issued subpoena commanding the ISPs to disclose the Doe Defendants' true identities, it will have no way of acquiring such information.  *See, e.g.*, Memorandum of Law in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference ("Memo of Law"), DE [7], at 10-11.   Accordingly, the Court finds that Malibu Media has demonstrated good cause for limited expedited discovery designed to ascertain the names and addresses of the Doe Defendants.

## C.   <u>Protective Order</u>

In reaching its conclusion, the Court reiterates the privacy concerns outlined above—namely, "the high risk of 'false positives' in the identification process (*e.g.*, one person's name and other identifying information is associated with the ISP account, but the copyrighted material was downloaded and uploaded by a different individual), combined with the sensitive nature of the copyright material at issue." *Malibu Media, LLC v. Doe*, 2012 U.S Dist. LEXIS 107131, at *7-*8.  And, the Court notes that Plaintiff has neither included the proposed subpoenas or the proposed language commanding production in its motion papers.   Thus, beyond Malibu Media's bare assertion that it seeks only enough information to effectuate service on the Doe Defendants and prosecute its cases, *see* Memo of Law at 10, there is no reason to conclude that adequate protections exist to safeguard the individuals or entities subscribing to the implicated IP addresses against the danger of "annoyance,

10

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).[1] Accordingly, as other courts to have confronted this issue have done, this Court *sua sponte* issues a protective order which will govern the manner in which the expedited discovery shall be conducted.  The terms of the protective order, which are operative in each of the related cases specifically enumerated in the caption hereinabove, are as follows:

**IT IS ORDERED** that Malibu Media may immediately serve a subpoena in compliance with Fed. R. Civ. P. 45 (the "Subpoena(s)") on the ISP specifically identified in the Complaint, to obtain **<u>only</u>** the name and address of the internet subscriber associated with the IP address also identified therein.  Under no circumstances is Malibu Media permitted to seek or obtain any Doe Defendant's phone number or email address, or to seek or obtain information about potential defendants other than those whose IP addresses are specifically identified in the Complaints, without a further Court order.  Each such Subpoena shall have a copy of this Order attached; and

**IT IS FURTHER ORDERED** that, upon receiving a Subpoena, the ISP shall use reasonable efforts to identify the internet subscriber(s) associated with the referenced IP address, but **<u>shall not</u>** immediately disclose such information to Malibu Media.  Rather, within 60 days of receiving a Subpoena, the ISP shall serve a copy thereof, together with a copy of this Order, upon the subscriber(s) it determines to be associated with the implicated IP address.  This measure is appropriate to place the subscriber(s) on fair notice of Malibu Media's efforts to obtain his or her identifying information, and his or her rights to contest the Subpoena or litigate it anonymously. In this regard, service by the ISPs upon any of the Doe Defendants may be made using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class or overnight mail; and

**IT IS FURTHER ORDERED** that a Doe Defendant who receives copies of the Subpoena and this Order will have a period of 60 days to file any motions with

---

[1] In fact, at least one court has concluded, under similar circumstances, that Malibu Media's failure to include the proposed subpoena or operative language commanding production was grounds for denying expedited discovery altogether. *See Malibu Media, LLC v. Doe*, 15-cv-1883, 2015 U.S. Dist. LEXIS 51579, at *5 (S.D.N.Y. Apr. 10, 2015).

this Court contesting the Subpoena (including a motion to quash or modify the Subpoena), as well as any request to litigate the Subpoena anonymously. **The ISP may not disclose any Doe Defendant's identifying information to Malibu Media, or its employees or agents, at any time before the expiration of the 60-day period.** Additionally, if a Doe Defendant or ISP files a motion to quash the Subpoena, the ISP **may not** turn over any information to Malibu Media, or its employees or agents, until the issues set forth in the motion have been addressed and the Court issues an Order instructing the ISP to resume in turning over the requested discovery; and

**IT IS FURTHER ORDERED** that if the 60-day period within which a Doe Defendant may contest or otherwise move with respect to a Subpoena lapses without such action, the ISP will have a period of 10 days to produce the information responsive to the Subpoena to Malibu Media or file its own motion to quash if it so chooses. In the event a Doe Defendant or ISP moves to quash or modify a Subpoena, or to proceed anonymously, he or she shall at the same time as his or her filing also notify the ISP so that the ISP is on notice not to release the Doe Defendant's contact information to Malibu Media, or its employees or agents, until the Court rules on any such motion; and

**IT IS FURTHER ORDERED** that an ISP receiving a Subpoena shall confer with Malibu Media and shall not assess any charge in advance of providing the information requested therein. If an ISP elects to charge for the costs of production, it shall provide a billing summary and cost report to Malibu Media; and

**IT IS FURTHER ORDERED** that any information ultimately disclosed to Malibu Media in response to the Subpoena may be used by Malibu Media solely for the purpose of protecting its rights as set forth in the Complaints; and

**IT IS FURTHER ORDERED** that until such further Order of the Court, each case identified in the caption above shall be litigated in the name of a "John Doe" defendant, regardless of what information is ultimately disclosed pursuant to the Subpoena.

Dated:     Central Islip, New York          **SO ORDERED:**
           July 29, 2015

                                            s/ Steven I. Locke
                                            STEVEN I. LOCKE
                                            United States Magistrate Judge

12